# Exhibit A

Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
Meghan E. George (SBN 274525)
LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21031 Ventura Blvd., Suite 340
Woodland Hills, CA 91364
Phone: 323-306-4234
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com
mgeorge@toddflaw.com
*Attorneys for Plaintiff*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
### FOR THE COUNTY OF KERN

| | |
|---|---|
| DOUGLAS PILCHER, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CARMAX AUTO SUPERSTORES, INC.; DOES 1-100, INCLUSIVE<br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>(1)   Violation of False Advertising Law (Cal. Business & Professions Code §§ 17500 *et seq.*),<br>(2)   Violation of Unfair Competition Law (Cal. Business & Professions Code §§ 17200 *et seq.*).<br><br>**Jury Trial Demanded** |

CLASS ACTION COMPLAINT

Plaintiff DOUGLAS PILCHER ("Plaintiff"), individually and on behalf of all others similarly situated, alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this class action Complaint against Defendants CARMAX AUTO SUPERSTORES, INC., (hereinafter "CARMAX" or "Defendant") to stop Defendant's practice of falsely advertising that all of their vehicles undergo a "rigorous 125 point inspection", when those inspections are not actually being done, thereby misleading a class of consumers ("Class Members") who would not have purchased their vehicles but for this advertisement.

2. Defendant CARMAX widely advertises to consumers that all vehicles sold on their lots ("Class Vehicles") have undergone rigorous 125-point inspections before sale to the consumers.

3. This representation is of particular value to consumers, like Plaintiff, who are buying vehicles that are used.

4. Plaintiff and other consumers similarly situated were exposed to these advertisements through print and digital media.

5. In fact, CARMAX was filling out inspection reports and certifying the inspections were done, when they were not completed, in order to make sales.

6. Defendant misrepresented and falsely advertised and represented to Plaintiff and others similarly situated by failing to disclose in either its advertisements or the contract itself that Defendant was not actually completing its advertised rigorous 125 point inspections.

7. Defendant's misrepresentations to Plaintiff and others similarly situated induced them to purchase Defendant's Class Vehicles.

8. Defendant took advantage of Plaintiff and similarly situated consumers unfairly and unlawfully.

## JURISDICTION AND VENUE

9. This class action is brought pursuant to California Code of Civil Procedure § 382. All causes of action in the instant complaint arise under California Statutes.

CLASS ACTION COMPLAINT

10. On information and belief, Defendant CARMAX AUTO SUPERSTORES, INC. (referred to "Defendant" or "Carmax") is a Virginia corporation whose principal places of business is located in Richmond, Virginia, and who operates CARMAX retail locations throughout California, including in Kern County.

11. This Court has personal jurisdiction over Defendant, CARMAX, because Defendant operates retail locations in Kern County where the offending conduct occurred.

12. This matter is properly venued in the Superior Court of the State of California for the County of Kern because Defendant does business within the state of California and the County of Kern, and a significant portion, if not all, of the conduct giving rise to Plaintiff's claims happened here.

**THE PARTIES**

13. Plaintiff Douglas Pilcher is a citizen and resident of the State of California, County of Kern. Defendant CARMAX is a corporation that does business in California, including Kern County.

14. Plaintiff alleges, on information and belief, that CARMAX's marketing campaign, as pertains to this matter, was created by CARMAX and was disseminated throughout California, and nationwide.

15. Plaintiff is informed and believes, and thereon alleges, that at all times relevant, CARMAX's sales of products and services are governed by the controlling law in the state in which they do business and from which the sales of products and services, and the allegedly unlawful acts occurred, which is California.

16. Plaintiff is informed and believes, and thereon alleges, that each and all of the acts and omissions alleged herein were performed by, or is attributable to, CARMAX and/or its employees, agents, and/or third parties acting on its behalf, each acting as the agent for the other, with legal authority to act on the other's behalf. The acts of any and all of CARMAX's employees, agents, and/or third parties acting on its behalf, were in accordance with, and represent, the official policy of CARMAX.

CLASS ACTION COMPLAINT

17. Plaintiff is informed and believes, and thereon alleges, that said CARMAX is in some manner intentionally, negligently, or otherwise responsible for the acts, omissions, occurrences, and transactions of each and all their employees, agents, and/or third parties acting on their behalf, in proximately causing the damages herein alleged.

18. At all relevant times, CARMAX ratified each and every act or omission complained of herein.  At all relevant times, CARMAX, aided and abetted the acts and omissions as alleged herein.

**PLAINTIFF'S FACTS**

19. In or around September 2023, Plaintiff purchased a 2013 Lexus RX350 F-Sport ("the Subject Vehicle") from Defendant.

20. Plaintiff requested that the Subject vehicle be transferred from CARMAX's Fresno location, to Bakersfield, CA.

21. The vehicle arrived two days later, but CARMAX held it for five days, informing Plaintiff that they were doing the 125+ point inspection that had been advertised, and a "deep clean."

22. On September 11, 2023, Plaintiff was told his vehicle was ready for pickup, that the 125+ point inspection and "deep clean" had been completed. Upon reaching the Carmax location to pick up his vehicle, Plaintiff observed the following on the Subject Vehicle:

    a. None of the passenger door locks were functioning

    b. The car was filthy and had not been cleaned

    c. There were deep scratches in the paint.

23. CARMAX agreed that they would fix all of the above issues "right away." Eleven days later, on September 22, 2023, the door locks had ben fixed, but the paint had not been repaired as promised. CARMAX agreed to fix the paint later, and in reliance on this representation, Plaintiff finalized his purchase of the vehicle and drove it off the lot.

24. Two days later, on September 25, 2023, Plaintiff noticed a shudder as the transmission shifted while driving. Plaintiff also observed the left rear door loudly squeaking.

CLASS ACTION COMPLAINT

Plaintiff immediately called and made a repair appointment for October 10, 2023.

25.    On the day of Plaintiff's appointment, Plaintiff drops off his vehicle and waits for over two hours before the service technician tells Plaintiff that they have verified his concern with the transmission, and that they need to send his vehicle somewhere else for repair. They assure plaintiff they will call him daily with updates regarding the vehicle.

26.    On October 20, 2023, Plaintiff has had no contact with CARMAX for ten days, and they still have his vehicle. He calls and is told, finally, that the transmission needs to be replaced but that they could not "find one' and that he would have to wait. They provided Plaintiff with no estimate on when the vehicle will be fixed.

27.    On October 23, 2023, Plaintiff went to CARMAX, in person, to ask about his vehicle. At this point, Plaintiff has been without a vehicle for almost a month, and this is the last day for Plaintiff to return the vehicle to CARMAX if he did not want to keep it. He was given no estimate about when his vehicle would be fixed, so Plaintiff elected to return the vehicle at that time.

28.    On the same day, October 23, 2023, Plaintiff purchased an Acura RDX from CARMAX ("Subject Vehicle 2"). The Acura is advertised by its window sticker to be an all-wheel drive car. This vehicle was represented as having completed the 125+ point inspection and deep clean. Plaintiff noticed that the backup camera was cloudy, and CARMAX promised to call Plaintiff to schedule an appointment.

29.    After purchasing Subject Vehicle 2, Plaintiff arrives home to find that the spare tire that was sold with the vehicle was completely flat.

30.    Plaintiff schedules a repair appointment for November 7, 2023. Between October 23, and November 7, Plaintiff notes that the radiator is leaking antifreeze, and the passenger window is making noise. The driver's side visor also falls off the vehicle.

31.    On November 7, 2023, Plaintiff waits three hours at his appointment at CARMAX before he is told that the camera had to be replaced, the window motor has to be fixed, and that the radiator has a hole in it. It subsequently takes two weeks for them to repair

CLASS ACTION COMPLAINT

the radiator hole, and Plaintiff picks up his vehicle on November 28, 2023.

32.   One day after picking up his vehicle, Plaintiff notices the radiator is leaking again. Plaintiff makes yet another appointment with CARMAX, and while CARMAX has the vehicle in their possession, the battery on the vehicle dies. CARMAX had to replace the radiator (again), and replace the battery during this visit.

33.   On December 26, 2023, Plaintiff notices that his neighbor's car, which is also an all wheel drive Acura RDX, has an All Wheel Drive emblem on the vehicle. Plaintiff's car did not have the emblem. Plaintiff then gets underneath his vehicle, and discovers that the vehicle does not have rear axels; meaning that it was not an all wheel drive vehicle, as it was advertised to be.

34.   CARMAX apologies profusely to Plaintiff and offer to buy back his vehicle, which he accepts. Plaintiff has been without a car for weeks, at this point, as a result of CARMAX's false representations. Moreover, the window operation, radiator, spare tire, battery, and visor, are all items that are specifically listed as being part of CarMax's 125+ inspection.

35.   After taking a day to research yet another car, Plaintiff finds the 2015 Mercedes GLA 350 4Matic. He buys it on December 28, 2023, from CARMAX. During the visit, Plaintiff notices that the door strut/motor is making a noise, and they are also missing a second key for the vehicle. CARMAX promises to fix the door motor and obtain another key.

36.   On December 29, 2023, Plaintiff's sunroof breaks and will not close. Plaintiff also notices that the driver's side door weather seal is damaged. CARMAX promises to fix all of these issues.

37.   On January 10, 2023, Plaintiff dropped off the vehicle at CARMAX. They are unable to fix the sunroof, and tell Plaintiff they have to send the vehicle to Euro Autoworks to have it repaired. Plaintiff is given a defective loaner this time, which he has to return and obtain another low-quality loaner vehicle.

38.   After many frustrating phone calls, and excuses from CARMAX, Plaintiff's vehicle is held over 50 days, with no end in sight, by CARMAX. This has taken Plaintiff well

CLASS ACTION COMPLAINT

outside of the 30 day return window, and even outside of the 90 day warranty period. Again, each of these issues should have been caught/repaired if a 125+ inspection was actually done, which it could not have been, given the aforementioned facts.

39.    Plaintiff had no reasonable way of knowing that the 125+ inspections were not actually being done as advertised; and unless Plaintiff had the unique experience of purchasing three vehicles in succession all of which had issues listed on the 125+ inspection that had not been inspected or repaired, he may not have known. This is not a coincidence.

40.    CARMAX was aware that Plaintiff could not have reasonably known that it they were not doing the 125+ point inspections that they were falsely representing that they had done.

41.    Had Plaintiff known that CARMAX had not actually inspected each of these vehicles as advertised, Plaintiff would not have purchased any vehicle from CARMAX, rather, Plaintiff would have considered purchasing a new one or purchasing one from a different dealership.

42.    Plaintiff was significantly upset by CARMAX's repeated failure to correct or catch problems that they had expressly represented that they had already inspected in their 125+ point inspection.

43.    Such sales tactics employed on CARMAX rely on falsities and have a tendency to mislead and deceive a reasonable consumer.

44.    Plaintiff is informed, believes, and thereupon alleges that such representations were part of a common scheme to mislead consumers and incentivize them to purchase vehicles from CARMAX.

45.    Plaintiff reasonably believed and relied upon CARMAX's representations in its advertisement.

46.    Plaintiff materially changed his position in reliance on CARMAX's representations and was harmed thereby.

47.    Plaintiff would not have purchased the Lexus, the Acura, the Mercedes, or any similarly advertised vehicle had CARMAX disclosed that their 125+ point inspection was

CLASS ACTION COMPLAINT

actually not being done prior to sale.

48.   Had CARMAX properly marketed, advertised, and represented that it did not inspect vehicles before sale, Plaintiff would not have purchased any similarly advertised vehicle.

49.   CARMAX benefited from falsely advertising and representing the value of it's 125+ point inspection of its vehicles. Defendant benefited on the loss to Plaintiff and provided nothing of benefit to Plaintiff in exchange.

## CLASS ACTION ALLEGATIONS

50.   Plaintiff brings this action, on behalf of himself and all others similarly situated, and thus, seeks class certification under Federal Rule of Civil Procedure 23, and CCP Section 382.

51.   The class Plaintiff seeks to represent (the "Class") is defined as follows:

> All consumers, who, between the applicable statute of limitations and the present, purchased a vehicle from CARMAX that was advertised to have undergone a 125+ point inspection.

52.   As used herein, the term "Class Members" shall mean and refer to the members of the Class described above.

53.   Excluded from the Class are Defendant, its affiliates, employees, agents, and attorneys, and the Court.

54.   Plaintiff reserves the right to amend the Class, and to add additional subclasses, if discovery and further investigation reveals such action is warranted.

55.   Upon information and belief, the proposed class is composed of thousands of persons.  The members of the class are so numerous that joinder of all members would be unfeasible and impractical.

56.   No violations alleged in this complaint are contingent on any individualized interaction of any kind between class members and Defendant.

57.   Rather, all claims in this matter arise from the identical, false, affirmative written statements that Defendant would provide warranties to the Class Members, when in fact, such

CLASS ACTION COMPLAINT

representations were false.

58. There are common questions of law and fact as to the Class Members that predominate over questions affecting only individual members, including but not limited to:

    (a)    Whether Defendant engaged in unlawful, unfair, or deceptive business practices in advertising 125+ point inspections being completed on its used vehicles to Plaintiff and other Class Members with no intention of honoring them;

    (b)    Whether Defendant made misrepresentations with respect to its advertised 125+ point inspections for its products;

    (c)    Whether Defendant profited from this advertisement;

    (d)    Whether Defendant violated California Bus. & Prof. Code § 17200, *et seq*. California Bus. & Prof. Code § 17500, *et seq*., California Civ. Code § 1750, *et seq*.. California Civ. Code § 1790, *et seq*., and 15 U.S.C. § 2310, *et seq*.;

    (e)    Whether Plaintiff and Class Members are entitled to equitable and/or injunctive relief;

    (f)    Whether Defendant's unlawful, unfair, and/or deceptive practices harmed Plaintiff and Class Members; and

    (g)    The method of calculation and extent of damages for Plaintiff and Class Members.

59. Plaintiff is a member of the class he seeks to represent

60. The claims of Plaintiff are not only typical of all class members, they are identical.

61. All claims of Plaintiff and the class are based on the exact same legal theories.

62. Plaintiff has no interest antagonistic to, or in conflict with, the class.

63. Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class Member, because Plaintiff was induced by Defendant's advertisement during the

CLASS ACTION COMPLAINT

Class Period.  Defendant's unlawful, unfair and/or fraudulent actions concerns the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff's claims are typical of all Class Members as demonstrated herein.

64.    Plaintiff will thoroughly and adequately protect the interests of the class, having retained qualified and competent legal counsel to represent himself and the class.

65.    Common questions will predominate, and there will be no unusual manageability issues.

## FIRST CAUSE OF ACTION

### Violation of the California False Advertising Act

### (Cal. Bus. & Prof. Code §§ 17500 *et seq.*)

66.    Plaintiff incorporates by reference each allegation set forth above.

67.    Pursuant to California Business and Professions Code section 17500, *et seq.*, it is unlawful to engage in advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...or...to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

68.    California Business and Professions Code section 17500, *et seq.*'s prohibition against false advertising extends to the use of false or misleading written statements.

69.    Defendant misled consumers by making misrepresentations and untrue statements about the retail vehicles it was selling, namely, Defendant made consumers believe that Defendant had completed a rigorous 125+ point inspection for the Class Products listed in its advertisement even though this was not the case.

70.    Defendant knew that its representations and omissions were untrue and misleading, and deliberately made the aforementioned representations and omissions in order to deceive reasonable consumers like Plaintiff and other Class Members.

71.    As a direct and proximate result of Defendant's misleading and false advertising,

CLASS ACTION COMPLAINT

Plaintiff and the other Class Members have suffered injury in fact. Plaintiff reasonably relied upon Defendant's representations, to the tune of three separate occasions, regarding the promised 125+ point inspection for Defendant's products. In reasonable reliance on Defendant's false advertisements, Plaintiff and other Class Members purchased Class Products from Defendant believing that in case they would be sold used vehicles that had been rigorously inspected, per Defendant's promise and representation. However, Defendant did not inform Class Members that these inspections were not actually being completed.

72.    Plaintiff alleges that these false and misleading written representations made by Defendant constitute a "scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

73.    Defendant advertised to Plaintiff and other putative class members, through written representations and omissions made by Defendant and its employees, print and web advertisements, and television commercials.

74.    Defendant knew that they would not provide Plaintiff and Class Members with class products that had been subject to any level of inspection, let alone a 125+ point inspection that it promised.

75.    Thus, Defendant knowingly lied to Plaintiff and other putative class members in order to induce them to purchase the Class Products from Defendant.

76.    The misleading and false advertising described herein presents a continuing threat to Plaintiff and the Class Members in that Defendant persist and continue to engage in these practices and will not cease doing so unless and until forced to do so by this Court. Defendant's conduct will continue to cause irreparable injury to consumers unless enjoined or restrained.

77.    Plaintiff is at risk of suffering harm in the future given that he intends to purchase another vehicle. Plaintiff is entitled to preliminary and permanent injunctive relief ordering Defendant to cease their false advertising, as well as disgorgement and restitution to Plaintiff and all Class Members of Defendant's revenues associated with their false advertising, or such

CLASS ACTION COMPLAINT

portion of those revenues as the Court may find equitable.

## SECOND CAUSE OF ACTION

### Violation of Unfair Competition Law

### (Cal. Bus. & Prof. Code §§ 17200 *et seq.*)

78.    Plaintiff incorporates by reference each allegation set forth above.

79.    Actions for relief under the unfair competition law may be based on any business act or practice that is within the broad definition of the UCL.  Such violations of the UCL occur as a result of unlawful, unfair or fraudulent business acts and practices.  A plaintiff is required to provide evidence of a causal connection between a defendant's business practices and the alleged harm--that is, evidence that the defendant's conduct caused or was likely to cause substantial injury.  It is insufficient for a plaintiff to show merely that the defendant's conduct created a risk of harm.   Furthermore, the "act or practice" aspect of the statutory definition of unfair competition covers any single act of misconduct, as well as ongoing misconduct.

### UNFAIR

80.    California Business & Professions Code § 17200 prohibits any "unfair ... business act or practice."  Defendant's acts, omissions, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.  There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Plaintiff reserves the right to allege further conduct which constitutes other unfair business acts or practices.  Such conduct is ongoing and continues to this date.

81.    In order to satisfy the "unfair" prong of the UCL, a consumer must show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to consumers or competition; and, (3) is not one that consumers themselves could reasonably have avoided.

82.    Here, Defendant's conduct has caused and continues to cause substantial injury

to Plaintiff and members of the Class.  Plaintiff and members of the Class have suffered injury in fact due to Defendant's decision to mislead consumers.  Thus, Defendant's conduct has caused substantial injury to Plaintiff and the members of the Class.

83.    Moreover, Defendant's conduct as alleged herein solely benefits Defendant while providing no benefit of any kind to any consumer.  Such deception utilized by Defendant convinced Plaintiff and members of the Class that Defendant would provide them with a used vehicle that had been subject to rigorous 125+ point inspection, and that Defendant would honor that promise upon purchasing Defendant's Class Products.  In fact, Defendant knew that they had no intention of providing the advertised inspections to the used vehicles they sold, and thus unfairly profited.  Thus, the injury suffered by Plaintiff and the members of the Class are not outweighed by any countervailing benefits to consumers.

84.    Finally, the injury suffered by Plaintiff and members of the Class is not an injury that these consumers could reasonably have avoided.  After Defendant falsely represented the 125+ point inspections, consumers changed their position by purchasing the Class Products, thus causing them to suffer injury in fact.  Defendant failed to take reasonable steps to inform Plaintiff and class members that the advertisement was false.  As such, Defendant took advantage of Defendant's position of perceived power in order to deceive Plaintiff and the Class. Therefore, the injury suffered by Plaintiff and members of the Class is not an injury which these consumers could reasonably have avoided.

85.    Thus, Defendant's conduct has violated the "unfair" prong of California Business & Professions Code § 17200.

**FRAUDULENT**

86.    California Business & Professions Code § 17200 prohibits any "fraudulent ... business act or practice."  In order to prevail under the "fraudulent" prong of the UCL, a consumer must allege that the fraudulent business practice was likely to deceive members of the public.

87.    The test for "fraud" as contemplated by California Business and Professions

CLASS ACTION COMPLAINT

Code § 17200 is whether the public is likely to be deceived.  Unlike common law fraud, a § 17200 violation can be established even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.

88.    Here, not only were Plaintiff and the Class members likely to be deceived, but these consumers were actually deceived by Defendant.  Such deception is evidenced by the fact that Defendant did not provide Plaintiff with the a used vehicle that had been subject to 125+ point inspections on three occasions, despite being told it had been, as advertised by Defendant. Plaintiff's reliance upon Defendant's deceptive statements is reasonable due to the unequal bargaining powers of Defendant against Plaintiff. For the same reason, it is likely that Defendant's fraudulent business practice would deceive other members of the public.

89.    Thus, Defendant's conduct has violated the "fraudulent" prong of California Business & Professions Code § 17200.

**UNLAWFUL**

90.    California Business and Professions Code Section 17200, et seq. prohibits "any unlawful…business act or practice."

91.    As explained above, Defendant deceived Plaintiff and other Class Members by falsely representing that Defendant was completing 125+ point inspections on its used vehicles.

92.    Defendant used false advertising, marketing, and misrepresentations to induce Plaintiff and Class Members to purchase Class Products from Defendant, in violation of California Business and Professions Code Section 17500, et seq.  Had Defendant not falsely advertised, marketed, or misrepresented the warranties for its products, Plaintiff and Class Members would not have purchased the warrantied Class Products from Defendant. Defendant's conduct therefore caused and continues to cause economic harm to Plaintiff and Class Members.

93.    These representations by Defendant are therefore an "unlawful" business practice or act under Business and Professions Code Section 17200 *et seq*.

94.    Defendant has thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiff and Class Members to judgment and equitable relief against Defendant, as set

forth in the Prayer for Relief.   Additionally, pursuant to Business and Professions Code section 17203, Plaintiff and Class Members seek an order requiring Defendant to immediately cease such acts of unlawful, unfair, and fraudulent business practices and requiring Defendant to correct its actions.

## PRAYER FOR RELIEF

95.   Plaintiff, on behalf of himself and the Class, requests the following relief:

(a)   An order certifying the Class and appointing Plaintiff as Representative of the Class;

(b)   An order certifying the undersigned counsel as Class Counsel;

(c)   An order requiring Defendant, at its own cost, to notify all Class Members of the unlawful and deceptive conduct herein;

(d)   An order requiring Defendant to engage in corrective advertising regarding the conduct discussed above;

(e)   Actual damages suffered by Plaintiff and Class Members as applicable from being induced to call Defendant under false pretenses;

(f)   Punitive damages, as allowable, in an amount determined by the Court or jury;

(g)   Any and all statutory enhanced damages;

(h)   All reasonable and necessary attorneys' fees and costs provided by statute, common law or the Court's inherent power;

(i)   Pre- and post-judgment interest; and

(j)   All other relief, general or special, legal and equitable, to which Plaintiff and Class Members may be justly entitled as deemed by the Court.

///

///

///

///

CLASS ACTION COMPLAINT

## REQUEST FOR JURY TRIAL

96.    Plaintiff requests a trial by jury as to all claims so triable.


Dated:  May 29, 2024                    Respectfully submitted,

                                        LAW OFFICES OF TODD M. FRIEDMAN , PC


                                        By:  _____
                                             TODD M. FRIEDMAN, ESQ.

                                             Attorney for Plaintiff

CLASS ACTION COMPLAINT

| | FOR COURT USE ONLY |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF KERN**<br>BAKERSFIELD COURT<br>1215 TRUXTUN AVENUE<br>BAKERSFIELD CA  93301 | FILED<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF KERN<br><br>MAY 30, 2024<br>BY *Julia Barrera* DEPUTY |

| PLAINTIFF/PETITIONER:<br>  DOUGLAS  PILCHER<br>  DOUGLAS PILCHER, ON BEHALF OF OTHER MEMBERS OF<br>  THE GENERAL PUBLIC SIMILARLY SITUATED<br>DEFENDANT/RESPONDENT:<br>  CARMAX AUTO SUPERSTORES, INC. | |
|---|---|
| **NOTICE OF ASSIGNMENT TO JUDGE FOR ALL PURPOSES AND NOTICE OF ORDER TO SHOW CAUSE RE CRC RULE 3.110 AND NOTICE OF CASE MANAGEMENT CONFERENCE** | CASE NUMBER:<br><br>BCV-24-101786 |

By order of the presiding judge, the above entitled case is assigned to the Honorable Gregory Pulskamp for all purposes.  It will be managed on the direct calendar program in Bakersfield Division J until its conclusion. Peremptory challenges, if any, must be made within the times set out in CCP §170.6.

**TO PLAINTIFF AND PLAINTIFF'S COUNSEL:**
You are ordered to appear on **September 12, 2024** in **Bakersfield Division J** at **8:30 AM** to give any legal reason why sanctions shall not be imposed for failure to serve the complaint on all named defendants and file proof(s) of service with the court within sixty (60) days after the filing of the complaint pursuant to California Rules of Court, Rule 3.110.  All appearances are mandatory, unless the court receives the required proof(s) of service five (5) court days prior to the hearing date, and then no appearance is necessary.

**TO EACH PARTY AND THEIR RESPECTIVE ATTORNEY(S) OF RECORD:**
This case is set for Case Management Conference, by the Honorable Gregory Pulskamp on **December 02, 2024** at **8:30 AM** in **Bakersfield Division J**.  Case management statements are to be filed at least fifteen (15) days prior to the conference in accordance with California Rules of Court, Rules 3.720 – 3.730.  All parties shall comply with California Rules of Court, Rules 3.720 – 3.730.

### NOTICE TO PLAINTIFF'S COUNSEL
**IMPORTANT:  You are required to serve this Notice of Assignment and Notice of Order to Show Cause Date and Notice of Case Management Conference Date with the Summons, Complaint [Local Rule 3.7(a)], Alternative Dispute Resolution (ADR) Information Packet, and ADR Stipulation and Order Form  ( California Rules of Court, Rule 3.221).**

### NOTICE TO CROSS COMPLAINANT'S COUNSEL
**IMPORTANT:  If you are bringing a cross complaint against new parties, you are, likewise, required to serve this Notice of Assignment pursuant to California Rules of Court, Rule 3.110 and Notice of Order to Show Cause date and Notice of Case Management Conference date on the new cross defendants.**

**TARA LEAL**
CLERK OF THE SUPERIOR COURT

Date:  May 30, 2024

Signed: 5/30/2024 12:14:35 PM

By:  _____
Julia Barrera, Deputy Clerk

Notice of Assignment/Notice of Order to Show Cause Re CRC 3.110/Notice of Case Management Conference

Page **1** of **4**

The Clerk of the Superior Court's office has received a civil complaint from you for filing.  Pursuant to the Trial Court Delay Reduction Act, your case has been assigned to the Honorable Gregory Pulskamp as monitoring judge.

Judge Gregory Pulskamp has instituted a direct calendaring system for all cases assigned to him/her as the monitoring judge.

All law and motion, case management and trial setting conferences, ex parte matters and trials will be scheduled before him/her in Bakersfield Division J.

Law & Motion and Ex-Parte hearing dates must be pre-cleared by contacting the Direct Calendaring Clerk at 661-610-6460.  Tentative rulings are not provided in advance of the hearing.

At the time of filing the complaint, plaintiff's counsel will be given a Notice of Case Management Conference which sets a conference approximately one hundred eighty (180) days after filing of the complaint.  This notice must be served with the summons and complaint on all defendants. Defendants must serve the notice on all cross-defendants named.  The notice must also be served on interveners and lien claimants.

Pursuant to Local Rule 3.2.1. a party wishing to appear remotely in any civil proceeding other than an evidentiary hearing or trial, including conferences and law and motion hearings, is permitted to appear via Zoom without advance notice to the court or other parties. By appearing remotely those persons will be deemed to have requested a remote appearance. Instructions for accessing the court's Zoom account can be found on the court's website. Each judicial officer retains the discretion to require a party to appear in person at a conference, hearing, or proceeding, as authorized by Code of Civil Procedure section 367.75. Remote proceedings for evidentiary hearings or trials in all divisions shall be noticed and conducted as authorized by Code of Civil Procedure section 367.75 and California Rules of Court, rule 3.672.

Telephonic appearances for case management conferences and law and motion hearings are available through Court Call. The toll free telephone number for Court Call is (888) 88-COURT.  Proper procedures must be complied with under California Rules of Court, Rule 3.670.  Arrangements to make appearances through Court Call must be made at least five (5) court days prior to the hearing date.

The Court does not provide court reporters for civil matters. Parties wishing to have a matter reported must provide their own reporter. The court maintains a list of pre-approved official reporters pro tem. Your preferred reporter can be added to this list. Information regarding the court's list is on the court's website.

Another judge will hear settlement conferences in cases assigned to Judge Gregory Pulskamp.  However, those cases that do not settle will be set for trial before him/her.

Notice of Assignment/Notice of Order to Show Cause Re CRC 3.110/Notice of Case Management Conference

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF KERN**
**SPECIAL RULES RELATING TO CASE MANAGEMENT CONFERENCES**

At least fifteen (15) days prior to the case management conference, each party shall prepare, file and serve on each other party a case management conference statement providing the Court with the following information:

1. The "at-issue" status of the case including any new parties that may be contemplated;
2. A brief statement of the type of case and the general facts or contentions;
3. A description of the discovery done to date and that contemplated to be done;
4. Estimated time for trial and whether a jury is demanded;
5. Whether or not the case is entitled to priority in trial setting and if so, the legal authority thereof;
6. An evaluation of the case for alternative dispute resolution, including arbitration (judicial or binding), mediation or private judge handling;
7. If a person injury action, a description of the injuries sustained by each plaintiff and the elements of claimed damage;
8. A statement of any settlement negotiations undertaken thus far;
9. The name of the attorney primary responsible for the case on behalf of the party filing the statement.

More than one party may join in the filing of a single statement.

The case management conference shall be attended by the attorney primarily responsible for the case on behalf of each party or a member of his or her firm or counsel formally associated in the case. The attorney attending shall be thoroughly familiar with the case, and be able to engage in meaningful discussions with court and counsel, and to enter into agreements on behalf of his or her client on the following subjects:

1. The "at-issue" status of the case including the dismissal of the unnamed doe defendants or cross-defendants by agreement of all parties;
2. Discovery conducted and remaining to be done;
3. Amenability of the case to alternative dispute resolution including, but no limited to, arbitration (judicial or binding), mediation, and private judge handling.
4. Delineation of issues including stipulation of facts not in substantial controversy;
5. Settlement prospects;
6. Setting the matter for trial, pre-trial conferences, settlement conference or further case management conference;
7. Any other matters relevant to the processing of the case to a final resolution.

Any violation of these rules shall result in the imposition of substantial sanctions which may include monetary, issue, termination, or other appropriate sanctions.

PILCHER ET AL VS CARMAX AUTO SUPERSTORES, INC.
BCV-24-101786

## CERTIFICATE OF POSTING

The undersigned, of said Kern County, certify:  That I am a Deputy Clerk of the Superior Court of the State of California, in and for the County of Kern, that I am a citizen of the United States, over 18 years of age, I reside in or am employed in the County of Kern, and not a party to the within action, that I served the ***Notice of Assignment/Notice of Order to Show Cause Re CRC 3.110/Notice of Case Management Conference*** attached hereto on all interested parties and any respective counsel of record in the within action by posting true copies thereof,  to the Superior Court of California, County of Kern, Non-Criminal Case Information Portal (https://www.kern.courts.ca.gov).

Date of Posting:        May 30, 2024

Place of Posting:       Bakersfield, CA

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**TARA LEAL**
CLERK OF THE SUPERIOR COURT

Date:  May 30, 2024

Signed: 5/30/2024 12:14:36 PM

By: _____
Julia Barrera, Deputy Clerk

Certificate of Posting - Notice of Assignment/Notice of Order to Show Cause Re CRC 3.110/Notice of Case Management Conference

Page **4** of **4**